IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **HOLLY BAKER,** | : | CIVIL ACTION NO. 1:23-CV-1696 |
| Plaintiff | : | |
| | : | (Judge Conner) |
| v. | : | |
| | : | |
| **PENN STATE HEALTH HOLY,** | : | |
| **SPIRIT MEDICAL CENTER,** | : | |
| | : | |
| Defendant | : | |

**MEMORANDUM**

Plaintiff Holy Baker brings this suit against her employer, defendant Penn State Health Holy Spirit Medical Center ("Holy Spirit"), for alleged violations of the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 *et seq.*, and the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq*.  Holy Spirit now moves to dismiss Baker's amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim.  We will deny Holy Spirit's motion.

I.   **Factual Background & Procedural History**

Baker began working for Holy Spirit as an ultrasound technician in Camp Hill, Pennsylvania, in late 2020.  (See Doc. 16 ¶¶ 6, 13).  She suffered an injury to her wrist while performing an ultrasound in April 2021, for which she underwent surgery that December.  (See id. ¶ 14).  Holy Spirit initially accommodated the physical restrictions placed upon Baker by her physician by moving her to a "light duty" greeter position.  (See id. ¶ 16).  In June 2022, however, Holy Spirit informed Baker that the greeter position was no longer available because a full-time greeter had been hired, so she would have to start using her 12 weeks of FMLA leave.  (See

id. ¶¶ 17, 21, 23).[1]  Baker inquired about other light-duty positions, but she was told none were available.  (See id. ¶ 18).  She also claims she "applied for intermittent FMLA leave" at some point "in order to care for a family member," and that her intermittent leave "was ongoing" at the time of the events giving rise to this lawsuit.  (See id. ¶ 25).

Baker asserts that Holy Spirit needlessly "forced" her to take continuous FMLA leave even though her replacement as greeter left after one week and despite the availability of other light-duty positions for which she was qualified and capable of performing, including roles as pre-certification associate, call center scheduler, and unit desk clerk.  (See id. ¶¶ 20-22, 24, 26-27).  She believes that Holy Spirit interfered with her ability to use intermittent leave "for the treatment of her family member" by requiring her to take continuous leave.  (See id. ¶ 25).  Holy Spirit terminated Baker in September 2022 as she "approached exhaustion of her FMLA leave" without first attempting to accommodate her disability.  (See id. ¶¶ 28-30).  In January 2023, Holy Spirit attributed Baker's termination to "a technical error that had been corrected."  (See id. ¶ 31).  Baker describes this correction as functionally "meaningless" because she received no compensation or benefits for her time out of work.  (See id. ¶¶ 32-33).

Baker filed a dual charge of discrimination with the Equal Employment Opportunity Commission and Pennsylvania's Human Relations Commission; she

---

[1] In at least two instances, Baker erroneously avers that the relevant events took place in 2023, rather than 2022.  (Compare Doc. 16 ¶¶ 30, 52, with id. ¶¶ 17, 28).

received her right-to-sue notice from the EEOC in July 2023.  (See id. ¶¶ 10, 11, 12 n.1).  She commenced this lawsuit in October 2023 and subsequently filed an amended complaint alleging interference and retaliation under the FMLA (Count I) and disability discrimination under the ADA (Count II).[2]  Holy Spirit filed the instant motion on the grounds that the amended complaint does not state a plausible claim for relief.  The motion is fully briefed and ripe for disposition.

## II.     Legal Standard

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for the dismissal of complaints that fail to state a claim upon which relief may be granted. See FED. R. CIV. P. 12(b)(6).  When ruling on a motion to dismiss under Rule 12(b)(6), the court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008) (quoting Pinker v. Roche Holdings, Ltd., 292 F.3d 361, 374 n.7 (3d Cir. 2002)).  In addition to reviewing the facts contained in the complaint, the court may also consider "exhibits attached to the complaint, matters of public record, [and] undisputedly authentic documents if the complainant's claims are based upon these documents." Mayer v. Belichick, 605 F.3d 223, 230 (3d Cir. 2010) (citing Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993)).

---

[2] Baker intends to file a second amended complaint to include parallel state law claims once her PHRC charge ripens.  (See Doc. 16 ¶ 12 n.1).

Federal notice and pleading rules require the complaint to provide "the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Phillips, 515 F.3d at 232 (alteration in original) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)).  To test the sufficiency of the complaint, the court conducts a three-step inquiry.  See Santiago v. Warminster Township, 629 F.3d 121, 130-31 (3d Cir. 2010).  In the first step, "the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.'" Id. at 130 (alteration in original) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 675 (2009)).  Next, the factual and legal elements of a claim must be separated; well-pleaded facts are accepted as true, while mere legal conclusions may be disregarded.  Id. at 131-32; see Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009).  Once the court isolates the well-pleaded factual allegations, it must determine whether they are sufficient to show a "plausible claim for relief." Iqbal, 556 U.S. at 679 (citing Twombly, 550 U.S. at 556); Twombly, 550 U.S. at 556.  A claim is facially plausible when the plaintiff pleads facts "that allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678.

### III. Discussion

Holy Spirit argues that Baker has failed to state a claim upon which relief can be granted relative to all three of the causes of action in her amended complaint. (See Doc. 21 at 5-13).  We address these arguments *seriatim*.

### A. FMLA Claims

The FMLA entitles an eligible employee to 12 weeks' leave during any 12-month period for various reasons, including—but not limited to—the employee's

4

own serious health condition (if it renders them unable to perform the functions of their role) or that of a close family member for whom the employee must provide care. See 29 U.S.C. § 2612(a)(1), (b)(1). An employee may take continuous or intermittent leave, see id.; see also 29 C.F.R. § 825.202(a)—though "what qualifies as intermittent leave versus continuous leave" is not entirely clear from the statute and accompanying regulations, see Price v. Int'l. Paper Co., No. 21-30220, 2022 WL 729430, at *3 (5th Cir. Mar. 10, 2022) (*per curiam*) (nonprecedential). The FMLA provides for two causes of action: (1) one applies to allegations that an employer interfered with, denied, or restrained the exercise or attempted exercise of rights afforded by the statute, and (2) the other covers allegations that an employer retaliated against an employee for exercising those rights. See 29 U.S.C. § 2615(a)(1)-(2); Ross v. Gilhuly, 755 F.3d 185, 191-92 (3d Cir. 2014) (quoting Lichtenstein v. Univ. of Pittsburgh Med. Ctr., 691 F.3d 294, 301 (3d Cir. 2012)). Holy Spirit argues that Baker has failed to plead that she was denied benefits under the FMLA to support her interference claim, (see Doc. 21 at 6-7), and that both claims rest upon unpled facts, (see Doc. 24 at 3-4).³ We disagree.

---

³ With respect to purportedly unpled facts, Holy Spirit highlights two brief passages from Baker's opposition brief. (See Doc. 24 at 3-4). In the first, Baker contends that Holy Spirit forced her "to burn all of her remaining FMLA leave when it replaced [her as greeter] and refused to accommodate her with another light duty position," thereby denying her the benefits of intermittent leave. (See Doc. 23 at 7). In the second, Baker characterizes her replacement as greeter as "an effective termination" in and of itself. (See id. at 6). Baker seeks leave to amend to the extent her claims are not clear, (see id. at 6 n.1), but that is unnecessary. Contrary to Holy Spirit's suggestion, these are not new facts, but arguments fairly subsumed by the factual averments in Baker's amended complaint. Baker plainly alleges that she was on the verge of exhausting (or "burn[ing]") her 12 weeks of FMLA benefits after being put on continuous leave from the end of June to the end

### 1. *Interference*

Baker's FMLA interference claim requires her to plausibly allege that: (1) she was an eligible employee under the FMLA, (2) Holy Spirit was an employer subject to the Act, (3) she was entitled to leave, (4) she gave notice of her intention to take leave, and (5) she was denied benefits lawfully owed to her. See Ross, 755 F.3d at 191-92. Holy Spirit contests only the last of these elements. (See Doc. 6-7). It argues that the amended complaint is "devoid of **any** factual allegation that [it] actually denied her FMLA benefits" because Baker received all the leave to which she was entitled and she did not need to take intermittent leave while on continuous leave. (See id.) (emphasis in original).

Courts considering claims akin to Baker's have found charges of FMLA interference to be cognizable on the sole basis that an employer placed an employee on continuous leave instead of available intermittent leave against their wishes. In Brown v. Gestamp of Alabama, LLC, No. 2:16-CV-1862, 2018 WL 3455687 (N.D. Ala. July 18, 2018), for example, an employer denied an employee's recertification of intermittent leave and instead placed him on continuous leave. See Brown, 2018 WL 3455687, at *6. The district court rejected the employer's argument that it could

---

of September 2022, (see Doc. 16 ¶¶ 17-28), and she pled that Holy Spirit failed to return her to the greeter position after her would-be-permanent replacement vacated the post a week into the job, (see id. ¶¶ 21-22). While the latter claim may not literally constitute "termination" from employment, it is not unreasonable for Baker to describe it as the functional equivalent of a pink slip in the colloquial sense given that Holy Spirit never allowed her to return to any position at the Camp Hill facility before firing her.

substitute one type of leave for the other without running afoul of the statute as follows:

> By placing Mr. Brown on continuous FMLA leave, Gestamp necessarily *denied* Mr. Brown's concurrent request for intermittent leave. The nature of continuous leave pretermits an employee's ability to take intermittent leave. Gestamp's decision to place Mr. Brown on continuous leave meant that he could not use the intermittent leave he requested.

Id. (emphasis in original). Other courts similarly have entertained compulsory-continuous-leave claims. See Cooke v. Carpenter Tech. Corp., No. 20-14604, 2022 WL 17730393, at *3 (11th Cir. Dec. 16, 2022) (*per curiam*) (reversing grant of summary judgment and remanding for factual determination whether unilateral decision to put employee on continuous leave instead of requested intermittent leave constituted interference); Verhoff v. Time Warner Cable, Inc., 478 F. Supp. 2d 933, 941 (N.D. Ohio 2006) (explaining that employer's grant of "block leave is immaterial to whether it initially interfered with plaintiff's FMLA rights" by denying intermittent leave).[4]

Baker adequately alleges that she had requested and was granted intermittent FMLA leave, and that such leave was "ongoing" when Holy Spirit needlessly forced her to use continuous leave. (See Doc. 16 ¶ 25). We may reasonably infer that intermittent leave is designed to be exhausted more gradually, and thus can be used over a longer duration within a 12-month period. By the time

---

[4] The court acknowledges that nonprecedential decisions are not binding upon federal district courts. However, we cite these nonprecedential decisions because we have carefully considered each decision and we are persuaded by each court's *ratio decidendi*.

Baker exhausted her continuous leave in September 2022, she no longer had the option to use intermittent leave to care for her loved one, as was her right under the FMLA. (See id. ¶ 28). And Holy Spirit ensured that she could not use those benefits when it fired her, erroneously or not. (See id. ¶ 30). We will deny Holy Spirit's motion with respect to Baker's FMLA interference claim.[5]

### 2. *Retaliation*

Baker's FMLA retaliation claim requires her to plead that: (1) she invoked her right to leave under the FMLA, (2) she suffered an adverse employment decision, and (3) that decision was causally related to the invocation of her rights. See Ross, 755 F.3d at 193 (citing Lichtenstein, 691 F.3d at 302). Holy Spirit contends that Baker has not sufficiently pled any of these elements because: (i) she states in conclusory fashion that Holy Spirit "forced" her to take continuous leave, which does not establish an invocation of her rights, (see Doc. 21 at 8); (ii) the admittedly erroneous September 2022 termination notice was not an adverse employment action, (see id.); (iii) the fact that "nothing changed" after the mistaken termination does not demonstrate an adverse employment action, (see id.; see also Doc. 24 at 4);

---

[5] Holy Spirit also asserts Baker's interference claim is not cognizable to the extent she bases it upon her unrequited pleas for available light duty work. (See Doc. 21 at 7 (citing Nesmith v. Catalent USA Packaging, LLC, No. 21-5594, 2023 WL 3997955, at *2 n.4, 7 (E.D. Pa. June 14, 2023))). While we recognize that Baker appears to advance this argument in her opposition brief, (see Doc. 23 at 6-7), we do not consider it to be a standalone theory with respect to interference, and we need not evaluate it independently in light of our conclusion that she has plausibly alleged interference predicated upon Holy Spirit's continuous-leave directive.

and (iv) her allegations do not implicate a causal link between the erroneous termination and her invocation of rights, (see Doc. 21 at 8).  We are unpersuaded.

As noted, Baker alleges that she requested and received intermittent FMLA leave, to which she was entitled, which was ongoing in June 2022.  (See Doc. 16 ¶ 25).  Accordingly, she has sufficiently pled that she invoked her rights under federal law; a more detailed account is not required.  See Twombly, 550 U.S. at 555. Baker's amended complaint also satisfies Rule 12(b)(6) in asserting that she was subject to an adverse employment action.  Notwithstanding Holy Spirit's representations to the court, (see Doc. 24 at 4), or its belated *mea culpa* to Baker, (see Doc. 21 at 3 (citing Doc. 16 ¶ 31)), we accept as true that it replaced her as a greeter and "summarily terminated" her from its employ, (see Doc. 16 ¶¶ 21, 30). She claims that she was deprived of "wages [and] benefits" for several months and was never compensated for that loss.  (See id. ¶ 32).  We therefore read the amended complaint to adequately assert that Holy Spirit affected Baker's employment and benefits in adverse ways after she exercised her FMLA rights.

With respect to causation, we find that the timing of Holy Spirit's alleged actions is sufficient to render the amended complaint facially plausible at this stage. Causation may be shown by temporal proximity between protected activity and an act of retaliation.  See Shellenberger v. Summit Bancorp, Inc., 318 F.3d 183, 189 & n.9 (3d Cir. 2003); see also McCall v. Carbon Schulykill Community Hosp., Inc., No. 3:19-CV-2052, 2020 WL 5232393, at *6 (M.D. Pa. Sept. 2, 2020) (citing Lauren W. *ex rel.* Jean W. v. DeFlaminis, 480 F.3d 259, 267 (3d Cir. 2007)); cf. Jones v. Gulf Coast Health Care of Del., LLC, 854 F.3d 1261, 1271-73 (11th Cir. 2017) (discussing lack of

9

consensus on how to measure temporal proximity, and noting it can be measured from date of FMLA leave request or of expiration). According to Baker, Holy Spirit replaced her as a greeter in June 2022 while her intermittent leave was ongoing, falsely told her no other light-duty positions were available, stonewalled her requests for alternative light-duty work just days after placing her on continuous leave, and declined to recall her to the greeter position when her replacement left after one week. (See Doc. 16 ¶¶ 17-22, 25). She further alleges that Holy Spirit ultimately terminated her as she approached exhaustion of her FMLA leave instead of conferring with her to come to a reasonable work accommodation. (See id. ¶¶ 28-30). Viewed in the light most favorable to Baker, the temporal proximity between these events is indicative of a deliberate effort to frustrate her ability to use intermittent leave and to cause her to exhaust her FMLA benefits as quickly as possible as a prelude to her termination, and thus satisfies the causal element. We will deny Holy Spirit's motion with respect to Baker's assertion of retaliation in violation of the FMLA.

### B. ADA Claims

The ADA prohibits an employer from discriminating "against a qualified individual on the basis of disability" with respect to "job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." See 42 U.S.C. § 12112(a). Discrimination, in turn, contemplates two distinct causes of action: disparate treatment and failure to accommodate. See, e.g., Fowler v. AT & T, Inc., 19 F.4th 292, 298 (3d Cir. 2021). Both require an employee to show that: (1) they had


a disability as defined by the statute, (2) they were subject to an adverse employment action, (3) they were qualified for their position, and (4) the adverse employment action was because of their disability.  See id. at 299 (citing McNelis v. Pa. Power & Light Co., 867 F.3d 411, 414 (3d Cir. 2017)).

To illustrate the distinction between both theories of liability, our court of appeals has observed that a failure-to-accommodate claim may be viewed as a disparate treatment claim in which "the relevant adverse employment action is the employer's 'refusal to make reasonable accommodations for a[n employee's] disabilities.'"  Id. at 306-07 (quoting Colwell v. Rite Aid Corp., 602 F.3d 495, 504 (3d Cir. 2010)).  The amended complaint raises, and Holy Spirit challenges, distinct disparate-treatment and failure-to-accommodate claims.  (See Doc. 16 ¶¶ 52, 55; Doc. 21 at 11-13).  We find both claims to be plausible as alleged.

    1.    ***Disparate Treatment***

Apart from its argument that Baker fails to allege an adverse action—which we have already rejected, see *supra* Part III.A.2—Holy Spirit identifies two purported flaws in Baker's disparate-treatment claim.  First, it argues that Baker is not a "qualified individual" under the ADA because, as she admits, her physician's restrictions were "not compatible with the [u]ltrasound [t]echnician position."  (See Doc. 21 at 10-11 (quoting Doc. 16 ¶ 15)).  Second, it argues that her claim is not plausible because "she has not pled that she requested or desired" the light duty positions that she alleges were available.  (See id. at 11).  Holy Spirit is mistaken on both scores.

As Holy Spirit acknowledges, the ADA's definition of "qualified individual" asks whether the employee can perform the functions of a position "that such individual holds *or desires*." See 42 U.S.C. § 12111(8) (emphasis added); see also Doc. 21 at 11 (citing McDonald v. SEIU Healthcare Pa., No. 1:13-CV-2555, 2014 WL 4672493, at *9 (M.D. Pa. Sept. 18, 2014) (Conner, C.J.)). For that reason, whether Baker was still qualified to be an ultrasound technician is irrelevant to her disparate-treatment claim. With respect to the available light-duty work, even if Baker did not formally apply to one of the positions for which she was qualified, she plainly avers that she inquired as to their availability and generally made her desire to transfer or otherwise be accommodated known to the powers that be, but was met with silence. (See Doc. 16 ¶¶ 18-20); see also Shapiro v. Township of Lakewood, 292 F.3d 356, 359-60 (3d Cir. 2002) (mere fact that employee applied for transfer by letter rather than by formal application did not excuse employer from obligation to engage in interactive process under ADA). Baker was not required to plead that she was still qualified for the ultrasound technician position or that she formally applied for another available post to survive Holy Spirit's motion.

### 2. *Reasonable Accommodation*

Holy Spirit separately challenges Baker's reasonable accommodation claim on the ground that she was not entitled to an accommodation of her choice. (See Doc. 21 at 13 (citing Yovtcheva v. City of Phila. Water Dep't, 518 F. App'x 116, 122 (3d Cir. 2013) (nonprecedential); Keyhani v. Tr. of Univ. of Pa., No. 17-3092, 2019 WL 2568279, at *4 (E.D. Pa. June 21, 2019))). This argument suffers from the fact that the cases Holy Spirit cites for that proposition are plainly distinguishable on both

12

factual and procedural grounds.  Both decisions arose in the context of summary judgment motions, not motions to dismiss.  See Yovtcheva 518 F. App'x at 119; Keyhani, 2019 WL 2568279, at *1; cf. Phillips, 515 F.3d at 233.  And in both cases, the plaintiff-employees requested highly specific accommodations—namely, a transfer to a particular location and a modified work-from-home schedule.  See Yovtcheva, 518 F. App'x at 118; Keyhani, 2019 WL 2568279, at *2, 4-5.

Baker was far more flexible.  As soon as Holy Spirit replaced her as a greeter, Baker expressed her interest in any "available alternative light duty positions," several of which she claims were available.  (See Doc. 16 ¶¶ 18-20, 27).  She also claims that Holy Spirit completely ignored her inquiries about returning to work starting on or about June 24, 2022, and failed to "engage in the interactive process . . . to accommodate her disability" before firing her.  (See id. ¶¶ 19, 29-30).  Baker's allegations are enough to state a claim for denial of reasonable disability accommodations under the ADA.

## IV.   Conclusion

We will deny Holy Spirit's motion to dismiss.  An appropriate order shall issue.

/S/ CHRISTOPHER C. CONNER
Christopher C. Conner
United States District Judge
Middle District of Pennsylvania

Dated:   May 8, 2024